## ROBERTSON v. LYON.

1. In action to vacate a finding of lunacy under proper proceedings had in the Court of Probate the question of plaintiff's sanity was submitted to a jury, who found against the plaintiff, and the Circuit Judge approved their verdict. On appeal to this court the evidence was carefully examined and the same conclusion reached.

2. *Per* HUDSON, J. What is a condition of lunacy, stated.

Before HUDSON, J., Abbeville, February, 1884.

The opinion sufficiently states the case. The Circuit Judge was requested by plaintiff to charge as follows:

1. Persons *non compos mentis* are those who have not the regular use of the understanding sufficient to deal with discretion in the common affairs of life.

2. The term *non compos mentis* and of *unsound mind* mean the same thing, and have a determinate legal signification, importing not weakness of understanding, but a total deprivation of sense. The fact of soundness or unsoundness of mind does not depend on nor can it be collected from particular actions, but upon the general frame and habit of the mind.

3. Where it is seen that the prevailing characteristic of the mind is the absence of reasoning faculties, accompanied with only occasional manifestations of them, or where only in rare instances the reasoning powers can be detected at all, or where all the evidence tends to the conclusion that the individual is incapable of

transacting the ordinary affairs of life, then it is unsoundness of mind.

The judge responded to these requests as follows: These propositions are correct and charged, but with such modifications as render them applicable to the case at bar.

His general charge was as follows: This is a grave issue to the plaintiff. If he is not a lunatic, he should be allowed the free use and enjoyment of his property during his life, and the unrestrained right of disposing thereof after death. On the other hand, if he is a lunatic, it is equally important to him that some prudent person should be appointed to manage and care for that property in the interest of the lunatic. The law, in a spirit of humanity, requires that such should be done and provides the mode of proceeding. In an issue of this grave character you are not to be influenced by feelings of prejudice arising from a supposition that the relatives of the alleged lunatic may desire to place his property beyond his temporary control so that the remainder of it over and above his support may descend to them. You have nothing to consider in regard to their supposed cupidity, but must look with an eye single to the issue of fact here presented.

Now, what is lunacy? Much learning has been displayed upon the subject, much of it of a technical and abstruse character, but you must solve the question with the aid of common sense. In this present inquiry lunacy is a term of general import, embracing every kind of insanity or unsoundness of mind that incapacitates a person to attend to the ordinary business of life. It is not a mere weakness of mind nor a want of good business talent, nor is it thoughtlessness and improvidence in business. Men of sound minds are frequently spendthrifts. Such have the full right to use, enjoy, waste, and destroy their property, and it is nobody's business nor right to interfere. Some men waste their all in gambling and dissipation, but cannot be pronounced insane in the proper sense of the word. That unsoundness of mind, that lunacy which we are inquiring after in this issue, is such an unsoundness of mind as is evidenced by a total absence of sufficient capacity (mentally) to attend to the ordinary business of life. When one is entirely incapable of caring

for, controlling, and managing his own person and property, he is in the eye of the law a lunatic, requiring a guardian.

This may arise from various causes, and among them from old age, when it is termed *senilis dementia.* It happens when the body outlives the mind. Some men live to be very aged and very feeble in mind and in body, and yet it would be an act of inhumanity to have them declared lunatics and deprived of the free use and enjoyment of their property; whilst there are still others who, in their old age, become utterly incapable, mentally, to manage themselves and property, and in absence of relatives to take charge and manage for them the law and humanity require guardians to be appointed.

The language used in *Foster* v. *Means, Speer's Eq.,* 569, and cited by Mr. Noble, is not exactly the language I would use. It is there said that the term *"non compos mentis"* means a *total deprivation of sense.* Now, if by this is meant that the mind is a blank, having not a spark of intelligence or sense, such language would be too strong and sweeping in the issue now before us. I take it that one may have a spark of intelligence, a scintilla of sense, and yet be a lunatic over whose property a guardian should be appointed. With this explanation or interpretation the law of that case is applicable to this, and I adopt and charge all the propositions of Mr. Noble with this modification of the term *"total deprivation of sense."* A *non compos mentis, a lunatic,* is a person who is so far deprived (from any cause) of intelligence and sense as to be incapable of caring for and managing his person and property, and who for that purpose absolutely requires a guardian. You must gather from the testimony the general frame and state of the mind, the general habit of the man in connection with his business in daily life, in order to measure the mental capacity. It is not enough to justify you in pronouncing one a lunatic that he has been known now and then to do very foolish and silly things.

Now, in this case Mr. Robertson has been adjudged a lunatic by an inquisition duly appointed. That judgment is *prima facie* evidence of his lunacy and casts upon him the burden of traversing the same successfully. But you must remember that it was an *ex parte* proceeding, and by the evidence heard upon the stand

in this trial and that alone are you to be governed.    In weighing this testimony you should attach more weight to the testimony of witnesses who give you facts than to that of those who are unable to state facts which shed light upon the condition and state of his mind.    Ask yourselves the question, What has the man done and what is he still doing from which can be drawn the inference of sanity or insanity?    That he bought goods, paid for them, walks the streets, recognizes acquaintances, these are tangible facts from which inferences can be drawn, and are better than a meaningless "because" in response to questions.

The testimony of experts is of much importance in issues of this kind, and is to have more or less weight according as the witness may or may not have had the advantage of experience and practice in such matters.    But such testimony, like all others, is to be weighed by you and subjected to the test of the common sense method of scrutiny.    That is, you must look to and examine the foundations upon which the expert bases his belief.

Weigh well all the testimony adduced and be governed by the preponderance of the evidence.    If it be true that at the time of the inquisition Mr. Robertson was only mentally enfeebled from a "spree," and that though of weak mind he has capacity to manage his business, even though badly, the verdict of the inquisition was wrong and you should correct it.    If, on the contrary, you find from the whole testimony that he was then and now is *non compos mentis*—a lunatic—in the sense in which I have explained the term, your verdict should so speak.

The jury having rendered a verdict in the negative on both questions submitted, the matter was further argued before the Circuit Judge, who rendered the following decree:

This case having come on for trial at the present term of said court, and after hearing the pleadings herein, the following issues of fact were submitted to a jury, to wit: 1st. Was John Robertson, the plaintiff, at the time of the inquisition of lunacy mentioned in the pleadings sane, that is, *compos mentis?*    2d. Is the said John Robertson now sane, that is, *compos mentis?*    After a full hearing the jury rendered a verdict in the negative as to both said issues of fact.

Upon further argument of counsel, and after due consideration of all the facts in said case, I do not feel that there are such facts in the case as would warrant me in reversing said findings of fact.    I feel constrained to concur in the findings of the jury under all the circumstances.    The evidence is not such as will justify the court in overruling the verdicts of the inquisition and of the jury in this case and in restoring to the plaintiff, John Robertson, control of his property.

It is therefore ordered, adjudged, and decreed, that the proceedings of the Probate Court be confirmed and that the complaint herein be dismissed.

The plaintiff appealed.

*Messrs. Noble & Noble*, for appellant.

*Mr. Eugene B. Gary*, contra.

February 24, 1886.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    On November 28, 1882, the appellant was adjudged a lunatic on inquisition in Probate Court for Abbeville County, the county in which he resided, the probate judge having first issued a writ *de lunatico inquirendo* to certain physicians of said county, who, after examination, reported that the intellect of appellant was impaired to such extent as to unfit him for the management of his business, which opinion was confirmed by the verdict of a jury organized according to law in such cases.    The jury rendered the following finding: "At the time of the taking of this inquisition the said plaintiff is a lunatic.    That his unsoundness of mind is such that he is not sufficient for the government of himself and property.    That he is very old and feeble and his habits of late have been very intemperate, and that it would be best to appoint a suitable person to take charge of the person and property of the said plaintiff," which was confirmed by the probate judge.    On the next day his honor, Judge Cothran, appointed the defendant, judge of Probate Court, guardian of the person and estate of said plaintiff, &c.

In May, 1883, the plaintiff instituted the proceeding below by

summons and complaint denying that he was a lunatic and unable to manage his own affairs, and praying that the whole proceeding before the Probate Court be set aside as untrue, unfair, irregular, and illegal, &c. The defendant answered and the matter coming up before his honor, Judge Hudson, he, on motion of plaintiff's attorneys, submitted the following questions to a jury for determination, viz.: "1st. Was John Robertson, the plaintiff, at the time of the inquisition of lunacy mentioned in the pleadings, sane, that is, *compos mentis?* 2d. Is the said John Robertson now sane, that is, *compos mentis?*" He further ordered that "in this issue the plaintiff shall hold the affirmative, and that the issues heretofore ordered be modified to harmonize herewith." The jury, after full testimony and a charge from the judge, rendered a verdict in the negative as to both said issues of fact, which verdict, after further argument, was confirmed by his honor.

The plaintiff has appealed upon three exceptions, two of them alleging not only insufficiency of evidence to sustain the verdict but a preponderance against it, and therefore the Circuit Judge should have set it aside; and the other, that the verdict was contrary to the charge and. for that reason it should have been set aside.

The two first, it will be observed, ask a review of the facts, which can only be had in this court in a case in chancery. Assuming this to be a case of that character, we have taken cognizance of the questions submitted and have given them a careful consideration. We recognize this to be our duty in all cases, but especially have we felt it here when we remembered the grave consequences involved to the plaintiff, accompanied as the case is with the startling proposition that the entire property of the plaintiff, which he has accumulated it may be by his own toil and labor during a long life, should be taken from him against his protest and handed over to another, and also that his person should be under the control and direction of that other, thus depriving him of many of his rights as a man and citizen. In an ordinary case in chancery the rule which obtains in this court as to the facts is well understood to be that we do not feel ourselves at liberty to reverse the findings below unless they are

entirely without testimony, or manifestly against its weight and preponderance, and our inquiry in such cases is ordinarily confined to those points. But in view of the important considerations suggested above and involved here, and the earnest appeal of plaintiff, we have to some extent relaxed this rule, and in our examination of the testimony have directed our attention not simply to the absence of all evidence, or the alleged manifest repugnance of the verdict against it, but we have gone further and inquired as to the affirmative support of said verdict, and our conclusion is the same as that reached by the Circuit Judge.

We feel constrained to confirm the finding of the jury. Whatever may have been his capacity in former years, we think the weight of the evidence sustains the proposition that now the plaintiff is incapable of managing his business, and that this results not from negligence, carelessness, or indifference, but from unsoundness of mind, which may be the result of old age, or excessive drink, intemperate habits, but nevertheless amounting to an unsoundness. Two of the physicians, experts, Drs. Parker and Gary, gave this as their opinion; the first saying "that he was a man of weak mind, amounting to unsoundness," and the latter that he did not think him a man of sound mind, and that his infirmity unfitted him to attend to business; that long and excessive drink would impair the mind and produce senile *dementia,* and that he thought that Mr. R. was then suffering from the impairment of mind. Dr. Mabry said that he could not say that he was insane or of unsound mind, but said that he testified at the former examination that, in his opinion, his intellect was impaired by infirmities and that he was incapable of attending to business. These opinions of the experts were supported by the testimony of several of the neighbors of the plaintiff. The testimony on the other side was negative, while all this was affirmative.

Besides this, it is a matter to be considered that the first proceeding was a writ *de lunatico inquirendo,* directed to three physicians to report his condition. Their report is found above. The next was a submission to a jury of the vicinage under the sanction and solemnity of legal proceedings. This jury found as the physicians had found, which was confirmed by the probate

judge, and the last was the submission of the questions to a second jury below who found with the previous findings, which was sustained and confirmed by an eminent and most careful Circuit Judge. Certainly under these circumstances, sustained as we think these different findings are by the testimony, it is our duty to confirm them.

We do not see in what particular the jury disregarded the charge of the judge.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.